May it please the court. My name is Bruce Wong. I represent the petitioners in this case. Maria Cristina Dattavis, Bernardo Dattavis and all. This case regards the citizens of the Philippines that left the country because of the deaths of two members of their family. And it appears in this case that the petitioners have met the well-founded fear of persecution. And one of the main issues here is, is there one central reason and a nexus? Just a brief interruption. You're not really talking about past persecution here, right? No, Your Honor. You're totally dedicated to well-founded fear of future persecution. And then trying to put family ties into that, correct? Imputed political opinion, Your Honor. I understand what you're saying, but these people are only, can only make their case if something their family has had is the reason they can say there's a fear of future persecution. Yes, Your Honor. And the petitioners were found credible, so all the testimony has to be given credibility. And there's two separate instances here. So the one is the brother that was killed over a land dispute. And the second one is the petitioner's father that was killed in broad daylight based on one of the main central reasons. It doesn't have to be a dominant the court has held. It's on his political affiliations, the fact that he's a businessman, he supported politicians, and he ran as a politician in the city of the Philippines. But there is a little bit different situation in this particular instance. The brother had a fight with a guy, and the brother was killed. And then the guy went to prison. And then the father was out trying to make sure that this guy had his just desserts, and therefore the father was subject to persecution as well. And at that point, I guess we're trying to figure out there's a brother who was there, and he moved to Manila. There's remaining family there. None of them have been targeted. And I guess I'm trying to figure out now we have a person who had nothing to do with it at all, not involved. And how do I get to future persecution? One can say subjectively they are feared. Okay, I'll give you that. But what can I say given my standard or review really says that they can suggest future persecution? I'll turn to the standard or review. Yes, Your Honor. You know, the objective standard, it can be, it's just credible, direct, specific evidence, and the record could support it. And it doesn't, it could be 10 percent of a chance of persecution. But the issue I want to get back to is that the imputed political opinion. The fact remains is the father investigated, and they found out that this gentleman, Fernando Sanguia, was a member of the NPA. So he had connections in the city, and even though he was incarcerated, the father died, was shot in broad daylight, mafia style. And that suggests that it's one central reason why the father was murdered. Just because it was mafia style? No, because of his political affiliations and because of the, of course one reason is retribution, revenge, because he initiated the prosecution. But nothing in the facts suggests that the police or the prosecutor, no one, but were targeted as well. Well, no one is certain at all why the father or the brother were killed. We don't know. That's correct, Your Honor. It's still speculative, but it's not unreasonable to think. When the petitioner testified, she got sources that it was based on the fact that he was a NPA member. And it was also in one of the reports that they did not exclude or omit the possibility that it was based, for the father anyways, that it was based upon the fact that it was politics or because he was involved in some business. Then how do we impute all of this over to the petitioners here? Well, they're all family members, and it's factually inaccurate. In the administrative record, the sister actually moved to Macau. Administrative record page 162 and 165. So the brother is the only one there, the younger brother. But it's true, he relocated to Manila. But according to the testimony of the petitioners, he fears that he's being followed. Well, where's the hard evidence that that is correct? It's going to be very difficult to show the hard evidence. But under the standard of one central reason, it doesn't have to be dominant. It could be two dominant, Your Honor, reasons. Well, there are two things going on, obviously. I mean, you're sort of talking about them, knowing that there are two things going on. Number one is the fear that something bad is going to happen. And the other one is why might that bad thing happen? Assuming for the moment that she has sufficient fear that something bad will happen, which may or may not be there on the record, tell me again about the protected ground as to say why the bad thing might happen. Well, she is a family member. It's a putative political opinion. And is it enough to be a family member that is to say my father has been killed and I don't really know why? I can't really prove that it's NPA, although I've got some. Her answer as to why they know it was NPA was a pretty tough answer to decipher. I mean, that is the big issue. I mean, she has credible – I don't know who the sources are, but her testimony is credible. And she said the sources have told her that it's – that Mr. Sagay, however you pronounce his name, is a member of the NPA. But, Mr. Wong, isn't it true that neither Maria or Bernard participated in any kind of a political activity? That is correct. But the persecutor might impute that still to the family members. The NPA is all over that city, the New People's Army. And I have trouble even – assume that the brother kills the man – the brother is killed by the man after an argument in the cemetery and because – arising out of the argument in the cemetery. Then assume that the father pursues the killer. The killer is a member of the NPA. The NPA takes revenge on the father because he's done that. Has the father been engaging in a political act? I mean, what he's been doing is he's been trying to get the guy who killed his son. And that doesn't sound as though he's after the NPA. He's after the guy who killed his son. But the revenge is also based on the fact that the father is a politician. The NPA opposes – Now, to what degree is he a politician? I understand he supports a politician. Does he run for office? He did at one time. But at the time of his death, he didn't. Yeah. At this point, do you want to hear from the government and then you can respond? Okay. Good morning, Your Honor. It's Jessica Siegel for the Attorney General. This record does not compel a reversal of the Board's decision in this case because there is no nexus between Petitioner's subjective fear of future harm and a protected ground. This record clearly demonstrates that Mr. – Mrs. Dabigas' fear of future harm is a protected ground.   Their murder stemmed from a personal quarrel between two private individuals that was unrelated to a political opinion or any protected ground, such as a family as a particular social group. Under the Real ID Act, this Court must find that any harm must be one central reason for the persecution. And this Court has held that that must be shown by direct or circumstantial evidence of a motive. A minor role in past mistreatment is insufficient. The evidence cannot be incidental, tangential, superficial, or subordinate to another reason. And that goes directly to what happened in this case. What happened in this case, as demonstrated by Mr. Dabigas' affidavit, the younger brother – I'm sorry, the older brother was managing the family land, and this individual, Mr. Sangui, was – had kept some rocks on the road. The brother asked him to move these rocks off the road because other people were trying to use the memorial park in preparation for a big celebratory day in the next few weeks. It escalated to a quarrel, which escalated to a loud disagreement. And Mr. Sangui specifically said that he would leave and come back and hurt Mr. – and hurt the brother, the younger brother. And he did just that. He left 20 minutes later. Fifteen minutes later, he came back with a gun and shot him. The witnesses that produced evidence for the criminal trial discussed how Mr. Sangui had left, had premeditated this attack, and it was solely based on this disagreement over the memorial park. There is no evidence in the record that Mr. Sangui has any connection to the NPA. Any evidence is purely speculative. And more importantly, there's no evidence that any political connection is related to this family at all. It is possible that the father was politically involved in the past, but that has no relation to what's happening to this family at this time. Therefore, because no nexus can be shown, their subjective fear is by itself insufficient to prove eligibility for asylum. Well, how about the aspect of this landowner's group? Address that one specifically, will you, from your standpoint? Of course. Similar to the imputed political opinion, there's no evidence that this specific incident that then escalated to the brother's murder that then continued on to the father's murder had anything to do with the land dispute. Yes, this family was involved in a local land dispute, and there is evidence that some landowners perhaps resented the family for being able, for winning in the end in that dispute, but there's no evidence that Mr. Sangui was one of those people that was involved in the land dispute. There's no evidence. He never said anything to the brother in the quarrel in relation to, you know, your family won and you really shouldn't own this land. It was purely based on a quarrel that escalated. It was a very private matter. The government wasn't involved. And there's just no direct evidence that ties what happened here to any possible protected ground. Just quickly to go over a couple of the other points in the board's decision in that we have talked a lot this morning about relocation in the earlier cases, and in this case the board did find an alternative relocation, but it is possible for this family to return to another area in the Philippines, just as the brother did. And I just wanted to point out that there are numerous cases in this court's case law that family remaining in the country and being able to relocate to other areas mitigates the well-founded fear of future persecution and also demonstrates that relocation is possible. And that's this court's case in Ochave as well as Lim and Santos-Limos. Thank you. Thank you. Mr. Wong, would you like to respond? Applicant's uncontroverted credible testimony as to the persecutor's motive may be sufficient to establish nexus. There's a substantial amount of evidence. It is her testimony being credible could establish the motive to a nexus. And under the Parasmovi case, it's true that it's one central reason, but it does not have to be the only reason, Your Honor. And it doesn't have to be the most important reason as well to be one central reason. And I believe Borja makes it clear that the applicant need not show that the protected ground standing alone would lead to the persecution. So we're not arguing that it's just one protected ground. There's obviously revenge, personal vendetta, and imputed political opinion. And this is distinguishable from the Parasmovi case because we had three grounds and they did not find one central reason in that case, Your Honor. Okay. Thank you very much. The case of Dadivas v. Holder is now submitted for decision.
judges: Mills, Fletcher W. , Smith N. R.